**McGuireWoods LLP**
Matthew C. Kane (SBN 171829)
    Email: ksakaue@mcguirewoods.com
Kerri H. Sakaue (SBN 301043)
    Email: ksakaue@mcguirewoods.com
1800 Century Park East, 8th Floor
Los Angeles, California 90067-1501
Telephone:  310.315.8200
Facsimile:  310.315.8210

**McGuireWoods LLP**
Sylvia J. Kim, Esq. (SBN 258363)
    Email: skim@mcguirewoods.com
Two Embarcadero Center, Suite 1300
San Francisco, CA 94111-3821
Telephone: 415.844.9944
Facsimile: 415.844.9922

Attorneys for Defendants
MOLSON COORS BEVERAGE COMPANY USA, LLC, MOLSON COORS USA LLC, MOLSON COORS BEVERAGE CO. DBA MILLERCOORS LLC, MILLERCOORS LLC, MILLERCOORS USA LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BENJAMIN HEARD, | CASE NO. |
| Plaintiff, | [LASC Case No. 20STCV46134] |
| vs. | **DEFENDANTS MOLSON COORS BEVERAGE COMPANY USA, LLC'S, MOLSON COORS USA LLC'S, MOLSON COORS BEVERAGE CO. DBA MILLERCOORS LLC'S, MILLERCOORS LLC'S, AND MILLERCOORS USA LLC'S NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT** |
| MOLSON COORS BEVERAGE COMPANY USA, LLC, MOLSON COORS USA LLC, MOLSON COORS BEVERAGE CO. DBA MILLERCOORS LLC, MILLERCOORS LLC, MILLERCOORS USA LLC, TAMARA OROZCO, BRETT  MCQUE, CULLEN JORDAN, TYLER ORTIZ, and DOES 1 through 100 inclusive, | |
| Defendants. | Complaint Filed:      12/3/2020<br>Complaint Served:   12/10/2020 |

139403381.3

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:

PLEASE TAKE NOTICE that Defendants MOLSON COORS BEVERAGE COMPANY USA, LLC ("MCBCUL") (formerly known as MILLERCOORS LLC ("ML")), MOLSON COORS USA LLC ("MCUL") (formerly known as MILLERCOORS USA LLC ("MUL")), and MOLSON COORS BEVERAGE CO. DBA MILLERCOORS LLC ("MCBC") (collectively, the "Entity Defendants"), by and through their counsel, hereby remove the above-entitled action from the Superior Court of the State of California in and for the County of Los Angeles (the "State Court"), in which the action is currently pending, to the United States District Court for the Central District of California on the grounds that this Court has original jurisdiction over this civil action pursuant to 28 U.S.C. §§ 1332, 1441(b) and 1446 and all other applicable bases for removal.  In support of this Notice of Removal, Defendants aver as follows:

## PLEADING AND PROCEDURES

1. On December 3, 2020, Plaintiff Benjamin Heard ("Plaintiff") commenced this civil action against the Entity Defendants, and individual defendants Tamara Orozco, Brett McQue, Cullen Jordan, and Tyler Ortiz, captioned *Benjamin Heard v. Molson Coors Beverage Company USA, LLC, Molson Coors USA LLC, Molson Coors Beverage Co. dba MillerCoors LLC, MillerCoors LLC, MillerCoors USA LLC, Tamara Orozco, Brett McQue, Cullen Jordan, Tyler Ortiz, and Does 1 through 100 inclusive*, Case No. 20STCV46134 in the State Court (the "State Court Action").  A true and correct copy of the Complaint for Damages ("Complaint") filed by Plaintiff is attached hereto as **Exhibit A**.

2. On December 10, 2020, MCBCUL's registered agent for service of process was personally served with the Complaint and Summons in the State Court Action.  A true and correct copy of the Summons served on MCBCUL is attached hereto as **Exhibit B**.

139403381.3

1

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT

3.     On December 15, 2020, ML's and MUL's registered agents for service of process were served with the Complaint and Summons in the State Court Action. A true and correct copy of the Summons served on ML is attached hereto as **Exhibit C**.  A true and correct copy of the Summons served on MUL is attached hereto as **Exhibit D**.

4.     The following additional documents from the State Court Action were served upon MCBCUL, ML and MUL, true and correct copies of which are attached hereto as the Exhibits identified below:

> **Exhibit E:**  Civil Case Cover Sheet
>
> **Exhibit F:**  Civil Case Cover Sheet Addendum and Statement of Location
>
> **Exhibit G:**  Notice of Case Assignment
>
> **Exhibit H:**  First Amended General Order
>
> **Exhibit I:**  Voluntary Efficient Litigation Stipulations
>
> **Exhibit J:**  Stipulation – Discovery Resolution
>
> **Exhibit K:**  Stipulation – Early Organizational Meeting
>
> **Exhibit L:**  Informal Discovery Conference
>
> **Exhibit M:**  Stipulation and Order – Motions in Limine
>
> **Exhibit N:**  ADR Information Package

5.     The Entity Defendants are informed and believe that the following additional documents are also on file in the State Court Action, true and correct copies of which are attached hereto as the Exhibits identified below:

> **Exhibit O:**  Proof of Service of Summons – MCBC
>
> **Exhibit P:**  Proof of Service of Summons – MCUL
>
> **Exhibit Q:**  Proof of Service of Summons – MCBCUL
>
> **Exhibit R:**  Proof of Service of Summons – MUL
>
> **Exhibit S:**  Proof of Service of Summons – ML
>
> **Exhibit T:**  Notice of Case Management Conference

6. Entity Defendants are informed and believe that the aforementioned documents and exhibits constitute all of the process, pleadings, and orders on file in the State Court action.

7. The docket for the State Court Action does not reflect any service of the Complaint or any other process or pleadings from the State Court Action upon Defendants Tamara Orozco, Brett McQue, Cullen Jordan, and Tyler Ortiz.

8. Likewise, Defendants "Does 1 through 100" have yet to be identified, and thus are to be disregarded for the purposes of this removal. *See* 28 U.S.C. § 1441(b)(1).

## TIMELINESS OF REMOVAL

9. This action has not previously been removed to federal court.

10. This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b), which provides that such Notices "shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim upon which such action or proceeding is based." Defendants have filed this Notice of Removal within 30 days of December 10, 2020, the first date on which Plaintiff served any of the Entity Defendants' agent for service of process with the Complaint. Accordingly, this action is being removed within 30 days of the first date upon which any of the Entity Defendants were served, through service or otherwise, with any paper giving them knowledge that the action was indeed removable.

## REMOVAL JURISDICTION - DIVERSITY

11. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332, 1441(b) and 1446, and all other applicable bases for removal. As required by 28 U.S.C. § 1441, the Entity Defendants remove this case to the United States District Court for the Central District of California which is the District Court embracing the place where the State Court Action has been filed.

12. Individual Defendants Tamara Orozco, Brett McQue, Cullen Jordan,

3

and Tyler Ortiz (collectively, the "Sham Defendants") either have not yet been served or service on them is not yet effective in this action, and are nevertheless fraudulently joined sham and nominal defendants and, therefore, are properly disregarded for purposes of this removal. *See, e.g.*, *Sanchez v. Lane Bryant, Inc.*, 123 F.Supp.3d 1238, 1241 (C.D. Cal. 2015) (Snyder, J.). Accordingly, the Sham Defendants need not consent to Defendants' removal of this action but, to the extent such consent is deemed to be required, the Entity Defendants are informed and believe that the Sham Defendants prophylactically join in and consent to this removal.

13.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), and it is an action that may be removed to this Court by the Entity Defendants, because: (1) there is complete diversity of citizenship between Plaintiff, on the one hand, and the Entity Defendants, on the other hand; and (2) the amount-in-controversy exceeds $75,000, exclusive of interest and costs.

14.    In accordance with 28 U.S.C. § 1446(d), the Entity Defendants are giving contemporaneous written notice of this Notice of Removal to all adverse parties and to the Clerk of the State Court.

## **CITIZENSHIP OF PARTIES**

15.    **Plaintiff's Citizenship.**   Entity Defendants are informed and believe that Plaintiff is a resident of the State of Georgia and intends to indefinitely remain living continuously in Georgia.[1]   As such, for purposes of diversity jurisdiction, Plaintiff is a citizen of Georgia. *See, e.g.*, 28 U.S.C. § 1332(a)(1) (an individual is a citizen of the state in which he or she is domiciled); *see also Mondragon v. Capital*

---

[1] To the extent Plaintiff alleges that he is a resident of California, Defendants deny and dispute that contention and expressly reserve their right to challenge such allegation.  Regardless, as discussed herein, the Entity Defendants are not citizens of California for the purpose of determining jurisdiction and the Sham Defendants are fraudulently joined sham and nominal defendants and, therefore, their citizenship should be disregarded for purposes of this removal.

4

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT

*One Auto Fin.*, 776 F.3d 880, 885-86 (9th Cir. 2013) (person's continuing domicile in a state establishes citizenship for purposes of removal "unless rebutted with sufficient evidence of change"); *Lew v. Moss*, 797 F.2d 747, 751-52 (9th Cir. 1986) (party domiciled in state of party's address); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) (residence is *prima facie* evidence of domicile for purposes of determining citizenship).

16.   **MillerCoors LLC's Citizenship.**  ML, which filed an amendment with the California Secretary of State to change its name to Molson Coors Beverage Company USA LLC on April 1, 2020, is a limited liability company organized and existing under the laws of the State of Delaware.  Under Ninth Circuit precedent, a limited liability company is deemed to be a citizen of the state of each state in which its owners/members are citizens.  *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (holding that a limited liability company is a citizen of every state of which its owners/members are citizen).  None of ML's members are citizens of California or Georgia, but, instead are citizens of one or more other states.  As such, Defendant MCL was not and is not a citizen of California or Georgia for the purpose of determining jurisdiction.  *See Johnson*, 437 F.3d at 899.

17.   **Molson Coors Beverage Company USA LLC's Citizenship.** MCBUL (formerly known as MillerCoors LLC) is a limited liability company organized and existing under the laws of the State of Delaware and is therefore deemed to be a citizen of the state of each state in which its owners/members are citizens.  *Johnson*, 437 F.3d at 899 (holding that a limited liability company is a citizen of every state of which its owners/members are citizen).  None of MCBUL's members are citizens of California or Georgia, but, instead are citizens of one or more other states.  As such, MCBUL was not and is not a citizen of California or Georgia for the purpose of determining jurisdiction.  *See Johnson*, 437 F.3d at 899.

18. **MillerCoors USA LLC's Citizenship.** MUL, which filed an amendment with the California Secretary of State to change its name to Molson Coors USA LLC on April 2, 2020, is a limited liability company organized and existing under the laws of the State of Delaware and is therefore deemed to be a citizen of the state of each state in which its owners/members are citizens. *Johnson*, 437 F.3d at 899 (holding that a limited liability company is a citizen of every state of which its owners/members are citizen). None of MUL's members are citizens of California or Georgia, but, instead are citizens of one or more other states. As such, Defendant MUL was not and is not a citizen of California or Georgia for the purpose of determining jurisdiction. *See Johnson*, 437 F.3d at 899.

19. **Molson Coors USA LLC's Citizenship.** MCUL (formerly known as MillerCoors USA LLC) is a limited liability company organized and existing under the laws of the State of Delaware and is therefore deemed to be a citizen of the state of each state in which its owners/members are citizens. *Johnson*, 437 F.3d at 899 (holding that a limited liability company is a citizen of every state of which its owners/members are citizen). None of MCUL's members are citizens of California or Georgia, but, instead are citizens of one or more other states. As such, Defendant MCUL was not and is not a citizen of California or Georgia for the purpose of determining jurisdiction. *See Johnson*, 437 F.3d at 899.

20. **Molson Coors Beverage Co. dba MillerCoors LLC's Citizenship.** As shown on the California Secretary of State's Business Entity Search website, MCBC is a Delaware corporation with its corporate headquarters and principle place of business in Milwaukee, Wisconsin. *See* URL at http://kepler.sos.ca.gov/cbs.aspx (search terms entered: "Molson Coors Beverage Company"). At its corporate headquarters, Defendant MCBC's officers direct, control and coordinate its activities and the majority of its executive and administrative functions are performed there. Thus, MCBC was not and is not a citizen of the State of California but, rather, was and is a citizen of the State of Delaware and/or the State of

Wisconsin for the purpose of determining jurisdiction. *See Hertz Corp. v. Friend*, 130 S.Ct. 1181, 1192 (2010) (for the purposes of removal, the "nerve center" test applies, whereby a corporation is deemed to be a citizen of the State where the corporation's officers direct, control, and coordinate the corporation's activities).

21. **Citizenship Of The Fraudulently Joined Sham Defendants.** In an attempt to destroy diversity of citizenship, Plaintiff has fraudulently joined Sham Defendants Tamara Orozco, Brett McQue, Cullen Jordan, and Tyler Ortiz. A fraudulently joined defendant will <u>not</u> defeat removal on diversity grounds. *See, e.g., Isaacs v. Broido*, 358 F. App'x 874, 876 (9th Cir. 2009) (noting fraudulently joined defendant "may be disregarded for the purpose of determining diversity jurisdiction") (citing *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) ("It is a commonplace that fraudulently joined defendants will not defeat removal on diversity grounds.").

22. Plaintiff alleges *two* out of twelve purported causes of action against the Sham Defendants, (1) asserting in his Second Cause Of Action for harassment that he was "subjected to harassing conduct through a hostile work environment, in whole or in part on the basis of [his] age, disability, medical condition, and/or other protected characteristics" in violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940(j), and (2) asserting in his Twelfth Cause Of Action for Intentional Infliction of Emotional Distress ("IIED") that the Sham Defendants intentionally inflicted emotional distress upon him. *See* Exh. A (Complaint), ¶¶ 29-36, 93-97. As discussed below, however, the Sham Defendants are fraudulently joined because the factual allegations in the Complaint pertaining to them are wholly inadequate under applicable law to state a claim for any cause of action alleged against them, and there is no possibility that Plaintiff can recover against the Sham Defendants on any of his claims. *See, e.g., Martinez v. Schneider Logistics Transloading & Distrib., Inc.*, 2016 WL 6833911, at *3-4 (C.D.

7

Cal. Nov. 18, 2016) (Bernal, J.) (denying motion to remand where allegations of disability harassment failed to state a claim for any cause of action against sham defendant).

### SECOND CAUSE OF ACTION FOR HARASSMENT

23. In support of his Second Cause of Action for harassment, Plaintiff alleges that he was "subjected to harassing conduct through a hostile work environment, in whole or in part on the bases of [his] age, disability, medical condition, and/or other protected characteristics." *See* Exh. A (Complaint), ¶ 31. While individual defendants *may* be held liable for claims of harassment, Plaintiff's allegations against the Sham Defendants are insufficient as a matter of law to sustain any claim for harassment because: (1) the alleged conduct by the Sham Defendants, or any of them, does not meet the legal definition of harassment; and (2) the alleged conduct by the Sham Defendants, or any of them, does not rise to the level of actionable harassment as a matter of law.

24. **First**, the alleged conduct attributed to the Sham Defendants in the Complaint fails to meet the legal definition of harassment:

➢ The alleged conduct by **Sham Defendant Tamara Orozco** ("Orozco") relates to allegations that she corrected Plaintiff's pronunciation of words during meetings in a "demeaning manner," in front of his coworkers. *See id.*, ¶ 15.b. Yet, Plaintiff also admits that he was previously denied a promotional opportunity by a *different* supervisor due to the difficulty that supervisor had "understanding [Plaintiff's] pronunciation" (*see id.* at ¶ 15.a.), and that Orozco said she was simply trying to help Plaintiff. *See id.* at ¶ 15.c. Plaintiff also makes vague allegations that, on multiple occasions during 2017 and 2018, she mocked Plaintiff's purported disability by mimicking his pronunciation or smirking when Plaintiff spoke during meetings. *See id.*, ¶ 15.c. Plaintiff also alleges that Orozco told him that "[he] should have stayed out until everything was completed"; Orozco gave him "annoyed looks whenever he went to the restroom"; Orozco told him that "he 'should have stayed out longer' and condescendingly told him, 'I believe this is too much for you'"; and that she and other supervisors were dismissive of his complaints. *See id.*, ¶¶ 15.c, 15.o, 15.v, 15.u. There are *zero allegations* in the Complaint that Orozco made inappropriate comments to Plaintiff, used slurs or epithets when communicating with Plaintiff, or made

any derogatory or offensive comments because he was a member of a protected group.

➢ The alleged conduct by **Sham Defendant Brett McQue** ("McQue") relates ***solely*** to Plaintiff's allegation that when McQue greeted Plaintiff in or around August 2018, he purportedly told Plaintiff he was "very sorry to hear about [Plaintiff's] sickness, in front of three unit managers"; and that he and other supervisors were dismissive of his complaints. *See id.*, ¶¶ 15.g, 15.j, 15.k, 15.l, 15.q, 15.r, 15.u. Plaintiff alleges he was wrongfully terminated by McQue and the proffered reason for his termination was pretextual. *Id.*, ¶ 16. There are ***zero allegations*** in the Complaint that McQue made inappropriate comments to Plaintiff, used slurs or epithets when communicating with Plaintiff, or made any derogatory or offensive comments because he was a member of a protected group.

➢ With respect to **Sham Defendant Cullen Jordan** ("Jordan"), the Complaint makes vague allegations that, on an unspecified number of occasions during 2017 and 2018, he mocked Plaintiff's disability by mimicking his pronunciation or smirking when Plaintiff spoke during meetings. *See id.*, ¶ 15.c. Plaintiff also alleges that when he asked Jordan for training or help, he purportedly ignored him or said he did not have time. *See id.*, ¶ 15.k. Once again, there are ***zero allegations*** in the Complaint that Jordan made inappropriate comments to Plaintiff, used slurs or epithets when communicating with Plaintiff, or made any derogatory or offensive comments because he was a member of a protected group.

➢ The alleged conduct by **Sham Defendant Tyler Ortiz** ("Ortiz") relates ***solely*** to vague allegations that, on multiple occasions during 2017 and 2018, he mocked Plaintiff's disability by mimicking his pronunciation or smirking when Plaintiff spoke during meetings. *See id.*, ¶ 15.c. Yet again, there are ***zero*** allegations that Ortiz ever made ***any*** comment— negative, derogatory, offensive or otherwise—because he was a member of a protected group.

Based upon these allegations ***alone***, Plaintiff contends that he was "subjected to harassing conduct through a hostile work environment" by the Sham Defendants. *Id.*, ¶ 31.

25. Under FEHA, "harassment" is defined to include verbal epithets, derogatory comments or slurs based on a **protected classification**; physical harassment such as assault, unwelcome touching or impeding movement when directed at an individual based on a protected classification; visual forms of

139403381.3

9

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT

harassment such as posters, drawings, etc. that are infringing on the rights of a protected classification; and requests for sexual favors or unwanted advances which condition an employment benefit upon consent thereto.  *See* Cal. Code Regs. Title 2, § 7287.6(b)(1).  Based on this definition of "harassment," California courts have held that making a personnel decision is "fundamentally different from the type of conduct that constitutes harassment."  *See Janken v. GM Hughes Elecs.*, 46 Cal.App.4th 55, 64 (1996).  As such, comments about work-related matters are ***not actionable*** as "harassment."  *See, e.g.*, *Martinez*, 2016 WL 6833911, at *3 (finding disability harassment allegations against sham defendant insufficient because "commonly necessary personnel management actions such as hiring and firing, job or project assignments, office or work station assignments, promotion or demotion, … the provision of support, … deciding who will be laid off, and the like, *do not come within the meaning of harassment*") (int. quot. marks omitted; emph. added).[2]

26.     Rather, harassment "consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." *Janken*, 46 Cal.App.4th at 63 ("Harassment is not conduct of a type necessary for management of the employer's business or performance of the supervisory employee's job.").  As such, while "commonly necessary personnel actions," including hiring, firing, and work assignments *might* give rise to a discrimination claim, they "do not come within the

_____

[2] *See also, e.g.*, *Haley v. Cohen & Steers Capital Mgmt., Inc.*, 871 F.Supp.2d 944, 957 (N.D. Cal. 2012) (holding that comments about plaintiff's performance and transfers, targeting her, threatening her with disciplinary action, preventing her from moving to east coast to be with her terminally ill father, removing territories from her, interfering with her medical leave, and causing her termination "do not constitute qualifying verbal, physical, or visual harassment with respect to plaintiff's gender or disability" under FEHA); *Velente-Hook v. Eastern Plumas Healthcase*, 368 F.Supp.2d 1084, 1103 (E.D. Cal. 2005) (requiring employee to return to work, refusing to provide accommodations, withholding paycheck, calling employee "dangerous," forcing employee to resign were all conduct within the course and scope of personnel management actions and, therefore, not within the definition of harassment).

meaning of harassment [because they] are actions of a type necessary to carry out the duties of business and personnel management." *Id.* at 64-65; *see Reno v. Baird*, 18 Cal.4th 640, 646-47 (1998).[3]  This distinction has been affirmed – and repeatedly *re-affirmed* – by California's state and federal courts. *See Roby*, 47 Cal.4th at 706 ("the exercise of personnel management authority properly delegated by an employer to a supervisory employee might result in discrimination, but not in harassment."); *Jacobson v. Schwarzenegger*, 357 F.Supp.2d 1198, 1219-20 (C.D. Cal. 2004) (McMahon, J.) (employer's request that plaintiff explain an absence or face work-related consequences, and the ultimate imposition of those consequences, were personnel management decisions that are "allegations of discriminatory discharge, not harassment.").[4]

27.    Under these well-established standards, the alleged conduct Plaintiff attributes to the Sham Defendants simply does **not** qualify as actionable harassment because each purported incident described in the Complaint constitutes an "action[ ] of a type necessary to carry out the duties of business and personnel management." *Janken*, 46 Cal.App.4th at 64-65.  In each instance, the Sham Defendants' identified conduct simply reflects their responses to Plaintiff's accommodation requests and complaints, and their attempts to help Plaintiff succeed in the workplace by assisting him with the pronunciation challenges that had allegedly compromised his promotional opportunities in the past. *See* Exh. A (Complaint), ¶¶ 15-16.  Plaintiff's

---

[3] *See also Roby v. McKesson Corp.*, 47 Cal.App.4th at 705-06 (2009) ("[H]arassment focuses on situations in which the social environment of *the workplace* becomes **intolerable** because the harassment (whether verbal, physical, or visual) communicates an **offensive message** to the harassed employee.") (emph. added).

[4] *See also, e.g.*, *Parks v. Bd. of Trustees of California State Univ.*, 813 F.Supp.2d 1182, 1198-99 (E.D. Cal. 2011) (granting summary judgment on FEHA harassment claim based on investigation, suspension and work assignments, stating that harassment and discrimination claims are "distinct under FEHA" and that harassment "focuses on situations in which the social environment of the workplace becomes intolerable because the harassment [] communicates an offensive message to the harassed employee").

Complaint is devoid of **any** allegations that Orozco, McQue, Jordan, or Ortiz made any disparaging or offensive comments to Plaintiff about his age, alleged disability, or any other protected status.[5]  While the allegations of the Sham Defendants' purported conduct may relate to Plaintiff's *other* claims for which individual liability is *not* available (*i.e.*, failure to accommodate, failure to engage in the interactive process, and disability discrimination), they certainly do not support a claim for harassment.  *See*, *e.g.*, *Cofer v. Parker-Hannifin Corp.*, 194 F.Supp.3d 1014, 1019-22 (C.D. Cal. 2016) (Carney, J.) (denying motion to remand and dismissing harassment claim against sham defendant where claim was based on "entirely personnel-related" conduct that "fit neatly within the discrimination framework," and noting that "[a]n employee may pursue a claim for discrimination against his employer solely based on such personnel-management-related conduct, but cannot pursue a claim for harassment").

28.    As such, Plaintiff's harassment claim against the Sham Defendants (or any of them) is **without merit as a matter of law**.  *See, e.g.*, *McBroom v. Wal-Mart Stores*, 2016 WL 3549606, at *3-5 (E.D. Cal. June 30, 2016) (denying motion to remand and granting motion to dismiss disability harassment claim against sham defendant where the sham defendant's allegedly harassing conduct of "comments about Plaintiff returning to work … cannot suffice to state a viable claim"); *Hurd v. Am. Income Life Ins.*, 2013 WL 5575073, at *1, 5 (C.D. Cal. Oct. 10, 2013) (Lew,

---

[5] To the extent Plaintiff attempts to premise his harassment claims against Orozco, Jordon and/or Ortiz based on allegations that they mimicked his pronunciation or smirked when he spoke during meetings, those claims are ***time-barred*** because those alleged incidents allegedly occurred in 2017 and 2018, more than one year before Plaintiff filed his charge with the Department of Fair Employment and Housing ("DFEH") on January 21, 2020.  To that point, former Gov't Code § 12960(d), which was in effect until December 31, 2020, set forth a one-year statute of limitations for filing claims with the DFEH, measured "from the date upon which the alleged unlawful practice … occurred."  Effective January 1, 2021, A.B. 9 extended that limitations period to three years, but expressly states that it does *not* revive claims, like Plaintiff's, that have *already lapsed* under previously applicable law.

J.) (supervisor found to be sham defendant where plaintiff alleged that she told the supervisor she was injured and, in response, the supervisor told her not to text her about medical leave and would call the plaintiff during dinner and "demand to know the status of her medical leave and paperwork."); *Gorom v. Old Dominion Freight Line Inc.*, 2013 WL 195377, at \*4 (C.D. Cal. Jan. 17, 2013) (Wilson, J.) (individual defendants fraudulently joined because allegations consisted only of "supervisors' personnel decision" where the plaintiff alleged they declined plaintiff's request for a transfer, declined his request for an accommodation otherwise, suspended him, and required him to attend a meeting where they accused him of misconduct).

29.    **Second**, Plaintiff's harassment claim against the Sham Defendants, and each of them, further fails because the Complaint's allegations do not rise to the level of actionable harassment.  Plaintiff's harassment claim requires proof that he was subjected to harassing conduct that was so ***severe*** and ***pervasive*** that it altered the terms and conditions of his employment and created an abusive working environment, and conduct that is occasional, isolated, sporadic, or trivial does not meet this standard.  *See, e.g.*, *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal.App.3d 590, 610 (1989); *Etter v. Veriflo Corp.*, 67 Cal.App.4th 457, 465 (1998); *Aguilar v. Avis Rent A Car Sys., Inc.*, 21 Cal.4th 121, 129-31 (1999); *see also Mokler v. Cnty. of Orange*, 157 Cal.App.4th 121, 145 (2007) (harassment does not encompass conduct that is only "rude, inappropriate, [or] offensive"); *Kelly-Zurian v. Wohl Shoe Co.*, 22 Cal.App.4th 397, 409 (1994) (actionable violation of law requires showing that the workplace is "permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment").  To that end, FEHA is not a general civility code for the workplace and is not designed to rid the workplace of vulgarity.  *See Lyle v. Warner Bros. Television Prods.*, 38 Cal.4th 264, 295 (2006).  It does not "outlaw … coarse and vulgar language or conduct that merely offends."  *Id.*  As one court has explained: "Not every unpleasant workplace

is a hostile environment. The occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers would be neither pervasive nor offensive enough to be actionable. The workplace that is actionable is the one that is **hellish**.” *Rogers v. City of Chicago*, 320 F.3d 748 (7th Cir. 2003) (emph. added).  Thus, FEHA protects **only** against conduct that is severe enough or sufficiently pervasive to alter the conditions of employment and create a hostile or abusive work environment, and is based upon a protected characteristic. *Lyle, supra.*

30.    Here, each purported instance of “harassment” was a **legitimate personnel decision or action** and certainly insufficient to show that Plaintiff’s <u>workplace</u> was permeated with insult and ridicule that was sufficiently severe or pervasive to alter the conditions of employment and create an abusive or intolerable working environment.  *See, e.g.*, *Reno*, 18 Cal.4th at 646 (“Harassment is not conduct of a type necessary for management of the employer's business or performance of the supervisory employee’s job.”).  Assuming, *arguendo*, the truth of Plaintiff’s allegations (which Defendants deny and dispute), these are **not** allegations of harassment.

31.    Thus, even if the conduct attributed to the Sham Defendants in the Complaint met the legal definition of “harassment” under FEHA (which it does not), Plaintiff’s harassment claim would still fail as against the Sham Defendants (and, for that matter, the Entity Defendants) because the conduct was not severe or pervasive as a matter of law.  *See, e.g.*, *Cofer*, 194 F.Supp.3d at 1018 (denying motion to remand where “[h]arassment focuses on situations in which the *social environment* of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee”) (int. quot. omitted; emph. in orig.).

32.    **Third**, even if any of the conduct Plaintiff attributes to the Sham Defendants could rise to the level of actionable harassment (which they cannot), his claims still fail as a matter of law because they are **time-barred**.  To that end, all of

139403381.3

14

DEFENDANTS’ NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT

the allegedly harassing statements and conduct that Plaintiff attributes to the Sham Defendants allegedly occurred in 2017 and 2018. *See* Complaint, ¶¶ 15.a.-15.r. But, Plaintiff did not file his charge with the DFEH until more than one year later, on January 21, 2020. *See* fn. 5. *supra*. Therefore, Plaintiff's harassment claims against the Sham Defendants are based upon allegations of conduct that occurred outside of the applicable limitations period, and Plaintiff is barred as a matter of law from pursuing those claims. *Id.*

### TWELFTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

33.    "The elements of a cause of action for intentional infliction of emotional distress ("IIED") are (1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering, and (4) actual and proximate causation of the emotional distress." *Molko v. Holy Spirit Ass'n*, 46 Cal.3d 1092, 1120 (1986). "Conduct is extreme and outrageous [for purposes of intentional infliction of emotional distress] when it exceeds <u>all</u> bounds of decency usually tolerated by a decent society, and is of a nature which is *especially* calculated to cause, and does cause, mental distress." *Fisher*, 214 Cal.App.3d at 617 (emph. added).  As such, "[l]iability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.*

34.    As a threshold matter, without a properly pled cause of action for harassment, Plaintiff has **not** pled any outrageous conduct by the Sham Defendants. *See id.* at 617-18. Plaintiff's Twelfth Cause of Action for IIED is premised upon the ***exact same*** innocuous conduct that he alleges in support of his purported harassment claim, *see* Exh. A (Complaint), ¶¶ 93, 94, and he does not allege *any* conduct on the part of the Sham Defendants, or any of them, which "exceeds all bounds of decency." *See Fisher*, 214 Cal.App.3d at 617.  Indeed, the Complaint does not even allege any "insults, indignities, threats, annoyances, petty oppressions, or other

trivialities"—which would still be insufficient to state a claim for IIED. *Id.* Instead, the Complaint alleges *only* personnel management activity and allegedly adverse employment actions relating to employee functions (and even then only on a limited basis), which activity is **insufficient** to support an IIED claim. *See Janken*, 46 Cal.App.4th at 80 ("A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged."); *see also, e.g.*, *Taylor v. FedEx Freight, Inc.*, 2017 WL 4022757, at *10 (E.D. Cal. Sept. 12, 2017) (finding that emotional distress that stems from an employer's unfavorable supervisory decisions "is a normal part of the employment relationship" and insufficient to sustain an IIED claim, even though plaintiff was scrutinized more closely than other employees, disciplined unfairly, transferred out of state, and eventually terminated); *Langevin v. Fed. Exp. Corp.*, 2015 WL 1006367, at *12 (C.D. Cal. Mar. 6, 2015) (Morrow, J.) (finding alleged conduct that plaintiff allegedly suffered, including false write-ups, discipline, demotion, and humiliation, were "generally recognized aspects of the normal employment relationship" that could not support a claim for IIED).

35.    As such, Plaintiff's IIED claim against the Sham Defendants (and any of them) is **without merit as a matter of law**. *See, e.g.*, *Garcia v. Consolidated Disposal Servs., L.L.C.*, 2018 WL 2228190, at *7 (C.D. Cal. May 14, 2018) (Wright, J.) (denying motion to remand where IIED claim was barred by the workers' compensation exclusivity rule and the complaint failed to allege any "extreme and outrageous conduct" supporting IIED claim against individual defendants); *Kaldis v. Wells Fargo Bank, N.A.*, 2016 WL 6407377, at *5 (C.D. Cal. Oct. 28, 2016) (Wright, J.) (denying motion to dismiss and finding defendant had been fraudulently joined to defeat diversity where only facts alleged in support of IIED claim against defendant involved personnel management decisions); *Wexler v. Jensen Pharm., Inc.*, 2015 WL 6159101, at *6-7 (C.D. Cal. Oct. 20, 2015) (Birotte, J.) (denying motion to remand where plaintiff's IIED claim was premised almost

entirely on personnel management actions and that did not support such a claim); *Langevin*, 2015 WL 1006367, at *12-13 (denying plaintiffs' motion for remand and finding individual defendants were fraudulently joined to, *inter alia*, plaintiff's IIED claim where the alleged conduct fell within "the normal risks inherent in the employment relationship" and the claim was barred by WCA exclusivity); *Stereoscope, LLC v. U.S. Bank Nat'l Ass'n*, 2015 WL 570099, at *4-5 (C.D. Cal. Feb. 11, 2015) (Pregerson, J.) (denying motion to remand where IIED claim had "no support in the facts as pleaded in the Complaint," which alleged that individual defendant did nothing more than advise the filing of a standard form); *Flores de Millan v. DolEx Dollar Express, Inc.*, 2010 WL 11596188, at *1 (C.D. Cal. Mar. 15, 2010) (King, J.) (denying motion to remand where complaint failed to allege any "extreme and outrageous conduct" supporting IIED claim against individual defendants, which claim was also barred by the WCA exclusivity rule).

36.     Plaintiff's inability to state a claim against the Sham Defendants as a matter of law makes their joinder as parties to this action fraudulent. *See Langevin*, 2015 WL 1006367, at *13; *see also, e.g.*, *Meisel v. Allstate Indem. Co.*, 357 F.Supp.2d 1222, 1226 (E.D. Cal. 2005) (denying motion to remand and granting motion to dismiss where plaintiff failed to state a claim against fraudulently-joined defendant); *Ritchey*, 139 F.3d at 1318 (finding individual defendants were sham defendants for purposes of removal where plaintiff failed to state a cause of action against each of them).     Therefore, the joinder and citizenship of the Sham Defendants can and should be ignored, and this case may be removed to this Court based on the diversity of citizenship that existed and exists between Plaintiff and the Entity Defendants at the time Plaintiff's Complaint was filed and at the time of removal.

37.     **Doe Defendants.**     Defendants "Does 1 through 100" are fictitious Defendants whose citizenship is disregarded for purposes of removal. *See* 28 U.S.C. § 1441(a).

139403381.3

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT

38.     As Plaintiff and the Entity Defendants have diverse citizenship, and the Sham Defendants' citizenship should be disregarded because they are fraudulently-joined, there is complete diversity of citizenship between the parties.

## AMOUNT IN CONTROVERSY

39.     An action may be removed to and remain in federal court where the defendant establishes, by a preponderance of the evidence, that the aggregate amount-in-controversy exceeds the jurisdictional amount.  *See Abrego Abrego v. Dow Chemical Co.*, 443 F.3d 676, 683 (9th Cir. 2006); *Bank of Calif. Nat'l Ass'n v. Twin Harbors Lumber Co.*, 465 F.2d 489, 491 (9th Cir. 1972).[6]  To satisfy the preponderance of the evidence test, a defendant must demonstrate that "it is more likely than not" that the amount-in-controversy is satisfied.  *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).  However, evidentiary submissions are **not** required ***at the time of removal***.  *See Arias*, 936 F.3d at 925 (holding that defendant need not prove the amount in controversy in notice of removal).  "Instead, evidence showing the amount in controversy is required '*only when* the plaintiff contests, or the court questions, the defendant's allegation.'"  *Id.* (emph. added)

40.     Indeed, when a defendant seeks to remove an action to federal court on grounds of diversity jurisdiction, "the defendant's amount-in-controversy allegation should be accepted [as true] when not contested by the plaintiff or questioned by the court."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 135 S.Ct. 547, 553 (2014); *Arias*, 936 F.3d at 927 ("[A]ssumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'").  At the time of removal, the removing defendant's burden of establishing that the amount in controversy exceeds $75,000

---

[6] *See, e.g., Arias v. Residence Inn by Marriott*, 936 F.3d 920, 924 (9th Cir. 2019) ("A district court may not remand the case back to state court without first giving the defendant an opportunity to show by a preponderance of the evidence that the jurisdictional requirements are satisfied.").

is not daunting and does not require the defendant to do extensive research or prove up the plaintiff's damages. *See Ray v. Wells Fargo Bank, N.A.*, 2011 WL 1790123, at *16 (C.D. Cal. May 9, 2011) (Matz, J.). Thus, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 135 S.Ct. at 554.

41. A plaintiff's complaint is a court's "first source of reference in determining the amount in controversy." *LaCrosse v. Knight Truck & Trailer Sales, LLC*, 775 F.3d 1200, 1203 (9th Cir. 2015). In determining whether the amount-in-controversy exceeds $75,000, the court must presume that the plaintiff will prevail on each and every claim alleged in his complaint. *See Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002) (Morrow, J.). The ultimate inquiry asks what amount is put "in controversy" by the operative complaint, not what amount a court or jury might later determine to be the actual amount of damages, if any. *See Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (defendants "are not stipulating to damages suffered" in a removal petition, "but only estimating the damages that are in controversy," because "jurisdiction must be analyzed on the basis of pleadings filed at the time of removal").[7] The Court may also look beyond the complaint to determine whether the amount-in-controversy is met, if necessary. *See Abrego Abrego*, 443 F.3d at 690.

42. The amount in controversy may include general and special compensatory damages. *See Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416

---

[7] *See also Scherer v. Equitable Life Assurance Soc'y of the United States*, 347 F.3d 394, 399 (2d Cir. 2003) (the "'amount in controversy' … for jurisdictional purposes, [is] the sum put in controversy by the plaintiff's complaint"); *see also, e.g., Wilder v. Bank of Am.*, 2014 WL 6896116, *4 (C.D. Cal. Dec. 5, 2014) (Morrow, J.) (determining amount in controversy requires that court assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint because the ultimate inquiry is what amount is put "in controversy" by the complaint, not what a defendant will actually owe).

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT

(9th Cir. 2018); *Simmons v. PCR Tech.*, 209 F.Supp.2d 1029, 1031 (N.D. Cal. 2002).    Further, when attorneys' fees are authorized by statute, they are appropriately part of the calculation of the "amount in controversy" for purposes of removal.  *See Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018); *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). Moreover, "a court **must** include *future* attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch*, 899 F.3d at 794 (emph. added); *see also Chavez*, 888 F.3d at 414-15 ("[T]he amount in controversy is determined by the complaint operative at the time of removal and encompasses *all* relief a court may grant on that complaint if the plaintiff is victorious." (emph. added)).    The amount-in-controversy may also include punitive damages and emotional distress.  *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001); *Kroske,* 432 F.3d at 980.

## PLAINTIFF'S COMPLAINT

43.    Plaintiff's Complaint in this action asserts twelve (12) claims for: (1) Discrimination on the Bases of Disability, Associational Disability, and Age in Violation of FEHA; (2) Hostile Work Environment Harassment on the Bases of Disability and Age; (3) Retaliation in Violation of FEHA; (4) Failure to Provide Reasonable Accommodation in Violation of FEHA; (5) Failure to Engage in the Interactive Process in Violation of FEHA; (6) Failure to Prevent Discrimination, Harassment, or Retaliation in Violation of FEHA; (7) Breach of Express Oral Contract; (8) Breach of Implied-in-Fact Contract; (9) Negligent Hiring, Supervision, and Retention; (10) Wrongful Termination in Violation of Public Policy; (11) Retaliation in Violation of Cal. Lab. Code § 1102.5(c); and (12) Intentional Infliction of Emotional Distress.  *See* Exh. A (Complaint), ¶¶ 22-97.

44. Plaintiff's Complaint does not seek a specific dollar amount of recovery. Instead, the Complaint seeks, *inter alia*, lost wages and benefits, emotional distress damages, punitive damages, attorneys' fees and costs, and all other relief that the Court deems just and proper. *See* Exh. A (Complaint), ¶¶ 17-20, 25-28, 33-36, 40-43, 49-52, 58-61, 66-69, 73, 77, 80, 83-86, 90-92, 95-97, and Prayer for Relief, ¶¶ 1, 2, 4.

45. However, as discussed above, the Entity Defendants may remove this action to federal court notwithstanding Plaintiff's failure to plead a specific dollar amount in controversy. To that end, the Entity Defendants' Notice of Removal need include only a *plausible* allegation that the amount in controversy exceeds the jurisdictional threshold. *Dart Cherokee*, 135 S.Ct. at 555; *see Arias*, 936 F.3d at 925 ("[A] a notice of removal 'need not contain evidentiary submissions.' Instead, evidence showing the amount in controversy is required 'only when the plaintiff contests, or the court questions, the defendant's allegation.'"). Moreover, the Entity Defendants' allegations regarding federal court jurisdiction, including the amount in controversy, <u>must be accepted as true</u> unless and until otherwise contested. *Accord Dart Cherokee*, 135 S.Ct. at 553.

46. As set forth below, and necessarily assuming that Plaintiff will prevail on each claim asserted in the Complaint, the compensatory damages, emotional distress damages, punitive damages, and statutory attorney's fees sought by Plaintiff establish that the amount-in-controversy exceeds $75,000.[8]

---

[8] The amount in controversy calculations, as set forth below, are based on an assumption *for purposes of removal only* that the allegations of Plaintiff's Complaint regarding his theories of liability are true but <u>without</u> any type of express or implied admission that the conduct alleged in the Complaint occurred, that Plaintiff has suffered any damages, and that such liability in fact exists. *See, e.g.*, *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005) ("Removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry.").

## COMPENSATORY DAMAGES

47.     The Complaint avers that, as a result of the Entity Defendants' alleged conduct, Plaintiff is seeking to recover compensatory damages, including lost wages and benefits.  *See* Exh. A (Complaint), ¶ 17 (seeking economic damages, including "lost ***past*** ***and*** ***future*** income and employment benefits, damage to his career, and lost wages, overtime, unpaid expenses, and penalties, as well as interest on unpaid wages at the legal rate from and after each payday on which those wages should have been paid, in a sum ***to be proven at trial***") (emph. added); *see id.*, ¶¶ 25, 33, 40, 49, 58, 66, 95 (alleging that Plaintiff has "sustained and ***continues to sustain*** substantial losses of earnings and other employment benefits") (emph. added), and Prayer for Relief, ¶ 1 (seeking recovery of "general and special damages according to proof").

48.     Notably, the amount in controversy is not limited to damages incurred prior to removal.  Instead, as the Ninth Circuit held in *Chavez v. JPMorgan Chase & Co.*, it includes lost wages incurred ***after the time of removal*** where, as here, they are expressly prayed for as relief in the operative pleading.  *See Chavez*, 888 F.3d at 417-18 (holding that lost wages incurred after removal were appropriately included in the amount in controversy since they were claimed at the time the case was removed by defendant).  Indeed, in determining the amount in controversy, it is appropriate to consider the amount of lost wages through the time of trial.  *See, e.g.*, *Tiffany v. O'Reilly Auto. Stores, Inc.*, 2013 WL 4894307, at *3-4 (E.D. Cal. Sept. 11, 2013) (post-removal lost earnings through trial properly included in the amount in controversy).

49.     Plaintiff was formerly employed by the Entity Defendants until he "was terminated by Defendants on or about August 9, 2019."  *See* Exh. A (Complaint), ¶ 16; *see also id.*, ¶¶ 12, 14.  Plaintiff alleges that he "requested and was granted July 28 to July 31, 2019 off work to support his daughter, who had a complicated pregnancy, during the birth of her child."  *See id.*, ¶ 15.x.  Plaintiff further alleges

that, "[o]n August 9, 2019, just a few days after his return from leave, [he] was wrongfully terminated." *Id.*, ¶ 16. At the time of his termination, Plaintiff's annual salary was $118,401.14, or approximately $2,276.95 per week [$118,401.14 ÷ 52 weeks], exclusive of other employment benefits received by him during his employment.[9]

50. Accordingly, to the extent Plaintiff prevails on any claim for lost wages from his alleged termination date (August 9, 2019) through the removal of this action to federal court *only*, the lost wages amount in controversy is *conservatively* estimated to be **not less than $168,494.30** (approximately 74 weeks [August 9, 2019 – January 8, 2021] x $2,276.95/week), which *on its own* satisfies the amount in controversy requirement.

51. Moreover, this lost earnings estimate is actually *under-calculated* given the relief sought in the Complaint. Indeed, in determining the amount in controversy, it is appropriate to consider the amount of lost wages *through the time of trial*. *See, e.g., Tiffany*, 2013 WL 4894307, at *3-4 (denying remand in employment discrimination action and accepting calculation of 108 weeks of post-removal lost wages through date of trial as appropriately included in amount-in-controversy calculation). Here, the Entity Defendants conservatively estimate that this matter will conclude by the end of September 2022, or within 20 months of their removal from the State Court.[10] Based thereon, calculating lost wages *through trial*

---

[9] If challenged, the Entity Defendants expressly reserve and do not waive their right to supplement and/or amend their removal submissions to rely on other, higher, reasonable assumptions and/or estimates in calculating the amount in controversy, including, without limitation, by including any lost benefits in calculating the amount in controversy—which would ***increase*** the amount in controversy. *See Arias*, 936 F.3d at 922 ("a removing defendant's notice of removal 'need not contain evidentiary submission'"); *Janis v. Health Net, Inc.*, 472 F. App'x 533, 534-35 (9th Cir. Mar. 20, 2012) (holding court erred in refusing to consider evidence of amount in controversy submitted *after* removal in response to a remand motion).

[10] This 20-month estimate is conservative in light of the 2020 U.S. Courts Caseload Statistics, which show that the median time interval for disposition of civil

yields an *additional* amount in controversy of **not less than $198,094.65** (approximately 87 weeks [January 8, 2021 – September 8, 2022] x $2,276.95 per week). *See, e.g., Chavez*, 888 F.3d at 417 ("If a plaintiff claims at the time of removal that her termination caused her to lose future wages, and if the law entitles her to recoup those future wages if she prevails, then there is no question that future wages are 'at stake' in the litigation, whatever the likelihood that she will actually recover them.").

52. Consequently – and without considering other employment benefits to which Plaintiff would have been entitled had his actual or alleged employment with the Entity Defendants not ended (which the Entity Defendants reserve the right to include if their amount-in-controversy calculations are challenged), and even without considering Plaintiff's additional requests for punitive damages, emotional distress damages, and attorneys' fees – it is "more likely than not" that the amount in controversy on Plaintiff's prayer for lost wages *alone* based on the allegations and relief sought in the Complaint exceeds the jurisdictional minimum of $75,000.

## EMOTIONAL DISTRESS DAMAGES

53. Plaintiff also seeks to recover damages for "humiliation, emotional distress, and mental and physical pain and anguish," which he claims to have suffered as a result of Defendants' purported conduct as alleged in the Complaint. *See* Exh. A (Complaint), ¶¶ 26, 34, 41, 50, 59, 67, 90, 96, and Prayer for Relief, ¶ 1.

54. Emotional distress damages are appropriately considered by the Court in determining whether the amount in controversy is satisfied for purposes of removal. *Kroske*, 432 F.3d at 980; *see also, e.g., Simmons*, 209 F.Supp.2d at 1034;

---

cases in this District, from filing through trial, is approximately ***23.2 months*** (or approximately 100 weeks). *See* Table C-5 at URL https://www.uscourts.gov/statistics/table/c-5/judicial-business/2020/09/30 (September 30, 2020).

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT

*Miller v. Michigan Millers Ins. Co.*, 1997 WL 136242, *5 (N.D. Cal. Mar. 12, 1997). Where a complaint does not seek a specific dollar amount of recovery on a claim for emotional distress damages, "[i]n order to establish the amount of emotional distress … damages in controversy, a defendant may introduce evidence of jury verdicts in cases involving analogous facts." *Rivera v. Costco Wholesale Corp.*, 2008 WL 2740399, *4 (N.D. Cal. July 11, 2008). District courts in California recognize that "emotional distress damages in a successful employment discrimination case may be **substantial**." *Simmons,* 209 F.Supp.2d at 1034 (emph. added); *Richmond v. Allstate Ins. Co.*, 897 F.Supp. 447, 450 (S.D. Cal. 1995) (same). Indeed, emotional distress damages awards in wrongful termination actions and actions based on discrimination or retaliation in violation of FEHA, like this one, frequently exceed the $75,000 amount in controversy **on their own**. *See, e.g.*, *Liemandt v. Mega RV Corp.*, 2011 WL 2912831 (Cal. Super. Ct. Feb. 4, 2011) ($385,000 emotional distress award to plaintiff who alleged wrongful termination based on age upon return to work from medical leave).[11]

55. In *Kroske*, 432 F.3d at 980, the Ninth Circuit held that the trial court properly estimated $25,000 for emotional distress damages for purposes of satisfying the amount-in-controversy where the plaintiff's wage loss was **only** $55,000 (which is significantly less than the lost wage amount in controversy in this removal). Accordingly, based on the Complaint's allegations (which are

---

[11] *See also, e.g.*, *Grodzik v. Calif. Conservation Corps.*, 2010 WL 2734467 (Cal. Super. Ct. June 15, 2010) ($100,000.00 emotional distress award to plaintiff on discrimination/failure to accommodate/retaliation claims); *Anderson v. Am. Airlines, Inc.*, 2008 Mealey's CA Jury Verdicts & Settlements 2008 ($1 million emotional distress damages award in federal FEHA discrimination action); *Kolas v. Access Bus. Grp.*, 2008 WL 496470 (Cal. Super. Ct. Jan. 14, 2008) ($200,000 emotional distress damages award based on a claim that plaintiff was fired based on his age and disability and in retaliation for filing a workers' compensation claim for a herniated disc he sustained on the job); *Lemke v. BCI Coca-Cola of Los Angeles*, 2004 WL 5825304 (Cal. Super. Ct. Dec. 1, 2004) ($135,000.000 emotional distress damages awarded in wrongful termination action wherein plaintiff alleged failure to accommodate and retaliation for engaging in protected activity).

harmonious with the estimation deemed appropriate in *Kroske*), Entity Defendants conservatively estimate that the minimum value of Plaintiff's emotional distress damages, if he were to prevail (as must be presumed for purposes of removal), would be *at least* **$25,000.00** for purposes of calculating the reasonable amount in controversy in this action.

## PUNITIVE DAMAGES

56.     Plaintiff also seeks punitive damages in connection with his claims. *See* Exh. A (Complaint), ¶¶ 28, 36, 43, 52, 61, 69, 85, 92, 97 (alleging that Defendants' alleged conduct was "committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants"); *see also id.*, Prayer for Relief, ¶ 2 (praying for "exemplary damages, according to proof").

57.     The Ninth Circuit has held that punitive damages should be considered by a district court when determining the amount-in-controversy where they are recoverable as a matter of law. *See Gibson*, 261 F.3d at 945. District courts routinely find that "the potential for large punitive damage awards in employment discrimination cases" satisfies the $75,000 amount in controversy without even considering other damages. *See Simmons*, 209 F.Supp.2d at 1033; *see also, e.g.*, *Chambers v. Penske Truck Leasing Corp.*, 2011 WL 1459155, *4 (E.D. Cal. Apr. 15, 2011 (finding that amount in controversy was satisfied because "punitive damages in employment matters may be substantial"); *Haase v. Aerodynamics Inc.*, 2009 WL 3368519, *4 (E.D. Cal. Oct. 19, 2009) (acknowledging million-dollar punitive damages awards and denying remand in employment discrimination action, noting that "even a minimum award of punitive damages would satisfy the jurisdictional requirement").[12]   Furthermore, punitive damages verdicts on claims

---

[12] *See also* California Civil Jury Instruction (CACI) 2433 (2015) (quoting *Gantt v. Sentry Ins.*, 1 Cal.4th 1083, 1101 (1992) ("A tortious termination subjects the employer to 'liability for compensatory and punitive damages under normal tort

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT

similar to Plaintiff's claims here typically far exceed the $75,000 jurisdictional minimum **on their own**. *See, e.g.*, *Lopez v. Bimbo Bakeries USA, Inc.*, 2009 WL 1090375, *10-18 (Cal. Ct. App. Apr. 23, 2009) (affirming *$2 million* punitive damages award on plaintiff's FEHA discrimination/wrongful termination claims).

58.    In *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 403, 425 (2003), the United States Supreme Court held that the longstanding historical practice of setting punitive damages at two, three, or four times the size of compensatory damages, while "not binding," is "instructive," and that "[s]ingle-digit multipliers are more likely to comport with due process."  Here, as shown above, Plaintiff's ostensible compensatory damages as of the time of removal is at least $193,494.30 ($168,494.30 + $25,000).  Utilizing the **smallest** ratio of 2:1 that *State Farm* found to be "instructive" (but without conceding its ultimate propriety for use in this case), and basing any potential punitive damages award solely on the general damages at issue in this action, the potential punitive damages award in this action is approximately **$386,988.60** [2 x $193,494.30 ($168,494.30 + $25,000)], even though the Entity Defendants deny that Plaintiff can ultimately establish the necessary conditions for obtaining punitive damages.

### STATUTORY ATTORNEYS' FEES

59.    Plaintiff's Complaint also seeks attorneys' fees in connection with his claims pursuant to the FEHA and Code of Civil Procedure § 1021.5.  Exh. A (Complaint) at 1:12-13 (seeking "reasonable attorneys' fees pursuant to Government Code section 12965(b) and Code of Civil Procedure section 1021.5"); *see also id.*, ¶¶ 27, 35, 42, 51, 60, 68, 86 (alleging that Plaintiff has "incurred and continues to incur legal expenses and attorneys' fees" and that he is "entitled to recover principles.'")).

reasonable attorneys' fees and costs (including expert costs) in an amount according to proof"); *id.*, Prayer for Relief, ¶ 4.  The FEHA and Labor Code provide for the recovery of statutory attorneys' fees by the prevailing party.  *See, e.g.*, Cal. Gov't Code § 12965(b), Cal. Lab. Code § 1021.5.

60.    In the Ninth Circuit, when attorneys' fees are authorized by statute, they are appropriately part of the calculation of the "amount in controversy" for purposes of removal.  *Fritsch*, 899 F.3d at 794; *see Galt*, 142 F.3d at 1155-56 ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."); *see also Arias*, 936 F.3d at 928 (finding district court erred in excluding prospective attorneys' fees from the amount in controversy).  Indeed, "a court **_must_** include **future** attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met."  *Fritsch*, 899 F.3d at 794 (emph. added); *see Arias*, 936 F.3d at 927-28 (noting that there is *no* split in authority as to whether attorneys' fees should be considered in the amount in controversy and reaffirming *Fritsch*'s holding that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met").

61.    The Court's own knowledge and experience in ruling on prevailing plaintiffs' motions for attorneys' fees in discrimination and wrongful termination cases, like this action, should indicate that it is "more likely than not" that Plaintiff will seek an attorneys' fees award of *at least* **$75,000.00** if this case is litigated to judgment in a jury trial.[13]  *See, e.g., Wysinger v. Auto. Club*, 157 Cal.App.4th 413*,*

---

[13] Given the other damages at issue in this action, even a minimal award of attorneys' fees would cause the amount in controversy to exceed the jurisdictional minimum in this action.  *See, e.g., Sasso v. Noble Utah Long Beach, LLC*, 2015 WL 898468, at *6 (C.D. Cal. Mar. 3, 2015) (Birotte, J.) (using a "reasonable rate for employment cases" of $300 per hour and "an appropriate and conservative estimate" of 100 hours to find that attorneys' fees in that case could "reasonably be expected to equal at least $30,000").

430-432 (2007) (affirming $980,000 attorneys' fees award in FEHA discrimination action); *Lopez,* 2009 WL 1090375, at *18-21 (affirming trial court's award of $1 million in attorneys' fees on FEHA discrimination/wrongful termination claims); *see also, e.g., Crawford v. DirecTV, Inc.*, 2010 WL 5383296 (Cal. Super. Ct. Sept. 29, 2010) (awarding approximately $160,000 in attorneys' fees in FEHA disability/wrongful termination action where the plaintiff's recovered damages were only $175,000); *Harris v. City of Santa Monica*, 2007 WL 4303742 (Cal. Super. Ct. Feb. 27, 2007) (awarding $401,188 in attorneys' fees where plaintiff prevailed in wrongful termination action); *Campos v. Valley Family Health Ctr. Med. Grp. Inc.*, 2007 WL 3275361 (Cal. Super. Ct. May 9, 2007) (awarding $117,165 in attorneys' fees to prevailing plaintiff in wrongful termination action).

62.    Indeed, the Entity Defendants reasonably estimate at this juncture that its own attorneys' fees to defend this action through a jury trial and post-trial motions will be well *over* **$75,000.00** based on its own past litigation experience. Based on the foregoing, and excluding for purposes of this removal any lost employment benefits to which Plaintiff claims to be entitled, the amount in controversy on Plaintiff's Complaint is **not less than $655,482.90**, which far exceeds the $75,000 jurisdictional threshold:

| **DAMAGES** | **CALCULATION** | **TOTAL** |
|---|---|---|
| Lost Wages (exclusive of future lost wages, lost employment benefits or interest) | Approximately 74 weeks of lost wages from August 2019 termination through date of removal only. | $168,494.30 |
| Emotional Distress Damages | Conservatively estimated per *Kroske*, 432 F.3d 976. | $25,000.00 |
| Punitive Damages | 2:1 compensatory damages ratio per *State Farm*, 538 U.S. 403. | $386,988.60 |
| Statutory Attorneys' Fees | Conservatively estimated based on analogous case law. | $75,000.00 |
| **TOTAL** | | $655,482.90 |

63.    Accordingly, this action is one over which this Court has original diversity jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441(b).

## **VENUE**

64.    The Entity Defendants are informed and believe that the events allegedly giving rise to this action occurred within this judicial district.  Venue lies in this Court because Plaintiff's action was filed in the Superior Court of Los Angeles County, California and is pending in this district and division.  Accordingly, the Entity Defendants are entitled to remove this action to the United States District Court for the Central District of California.  *See* 28 U.S.C. § 1441(a).

WHEREFORE, the Entity Defendants hereby remove the above-captioned action now pending in the State Court to this United States District Court.

DATED: January 11, 2021          **McGuireWoods LLP**


By:    /s/ Matthew C. Kane
        Matthew C. Kane
        Sylvia J. Kim
        Kerri H. Sakaue

        Attorneys for Defendants
        MOLSON COORS BEVERAGE
        COMPANY USA, LLC, MOLSON
        COORS USA LLC, MOLSON COORS
        BEVERAGE CO. DBA MILLERCOORS
        LLC, MILLERCOORS LLC,
        MILLERCOORS USA LLC

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 1800 Century Park East, 8th Floor, Los Angeles, CA 90067-1501.

On January 11, 2021, I served the following document(s) described as **DEFENDANTS MOLSON COORS BEVERAGE COMPANY USA, LLC'S, MOLSON COORS USA LLC'S, MOLSON COORS BEVERAGE CO. DBA MILLERCOORS LLC'S, MILLERCOORS LLC'S, AND MILLERCOORS USA LLC'S NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

Carney R. Shegerian, Esq.                    *Attorneys for Plaintiff*
Mahru Midjidi, Esq.                          *Benjamin Heard*
Rosie Zilifyan, Esq.
SHEGERIAN & ASSOCIATES, INC.
145 S Spring Street, Suite 400
Los Angeles, California 90012

☒ **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Los Angeles, CA, on that same day following ordinary business practices. (C.C.P. § 1013 (a) and 1013a(3))

☐ **BY ELECTRONIC DELIVERY:** I caused said document(s) to be transmitted electronically to the above addressees

☐ **BY OVERNIGHT DELIVERY:** I deposited such document(s) in a box or other facility regularly maintained by the overnight service carrier, or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents, in an envelope or package designated by the overnight service carrier with delivery fees paid or provided for, addressed to the person(s) served hereunder. (C.C.P. § 1013(d)(e))

☐ **BY PERSONAL SERVICE:** I caused such envelope(s) to be delivered the addressee(s). (C.C.P. § 1011)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 11, 2021, at Los Angeles, CA.

_____
Matthew Whitney

139403381.3                              31
DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT